UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CAROLYN DALLAS-CLARK                                                     Plaintiff

v.                                                     Case No. 4:23-cv-36-RGJ-HBB

JOHN EILERT                                                        Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Plaintiff Carolyn Dallas-Clark ("Dallas-Clark") claims that Defendant John Eilert ("Eilert"), a Kentucky State Police trooper, used excessive force while detaining her during a traffic stop. [DE 6]. Eilert moves for summary judgment. [DE 29]. Dallas-Clark responded [35] and Eilert replied [DE 42]. For the reasons below, Eilert's motion is **GRANTED in part** and **DENIED in part**. Dallas-Clark's emotional distress and negligence claims are dismissed as a matter of law. Her Section 1983 excessive-force claim and state-law claims of assault and battery remain for trial.

**I. BACKGROUND**

Eilert stopped Dallas-Clark for speeding one night in March 2022. [DE 29-1 at 185]. Events were largely captured on his cruiser's dash cam. [DE 32]. The footage is stamped in Zulu time. At this stage, the Court accepts "the facts as depicted by the recording" but still "construe[s] any remaining 'gaps or uncertainties' in the footage . . . in the light most favorable to" Dallas-Clark. *See Jones v. Naert*, 121 F.4th 558, 562 n.1 (6th Cir. 2024) (quoting *Heeter v. Bowers*, 99 F.4th 900, 910, 912 (6th Cir. 2024)); *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

According to state court records, Eilert observed Dallas-Clark's vehicle traveling at 19 miles per hour over an interstate speed limit. [DE 29-1 at 185]. He followed her down an exit ramp, then activated his cruiser's lights. [DE 32 at 2:39:12]. Dallas-Clark stopped on the right side of the

ramp with her vehicle partially over a curb. [*Id.* at 2:39:47]. Eilert approached on the vehicle's right side and, after some difficulty with the passenger window, asked Dallas-Clerk for her license and insurance. [*Id.* at 2:40:12]. Dallas-Clark claimed to be speeding because she was on her way to help a domestic violence victim. [*Id.* at 2:40:34]. After several minutes of conversation, she was yet to produce her documentation. [*Id.* at 2:45:30]. Her speech was slurred. [*Id.* at 2:40:34]. According to Eilert, her eyes were "bloodshot" and "glassy." [DE 29-1 at 185]. He suspected that "something . . . was going on with her." [DE 29-4 at 311–12]. Eventually he returned to his cruiser. [DE 32 at 2:47:52].

After looking up Dallas-Clark's information, Eilert approached her vehicle again, this time on the left side, and directed Dallas-Clark to exit. [DE 32 at 2:51:38]. She questioned his instruction. Eilert pulled the driver door handle; she said "no." [*Id.* at 2:51:57]. When Eilert told Dallas-Clark to "come out or I'm pulling you out," she responded with "I will not." [*Id.* at 2:52:00]. Eilert tried to pull her out of the vehicle but appears to lose his grip. Dallas-Clark stated, "I promise I won't resist." [*Id.* at 2:52:02]. Then Eilert pulled Dallas-Clark's left wrist to extract her from the vehicle. She landed on her side. [*Id.* at 2:52:04; DE 35-1 at 345]. On the ground she continued, "Sir, I won't resist! Oh god, you broke my shoulder. . . . Sir, I said I wouldn't." [DE 32 at 2:52:06].

Roughly 14 seconds passed between Eilert's initial instruction to exit the vehicle and his attempts to extract Dallas-Clark. [*Id.* at 2:51:50, 2:52:04]. In her deposition, Dallas-Clark testified that she did not get out voluntarily because she "didn't get a chance." [DE 35-1 at 343]. She also testified that, as she would have told Eilert with more time, she "needed my back brace out of the back." [*Id.* at 344]. Eilert does not claim that Dallas-Clark was under arrest at the moment in question. [DE 29-4 at 311–12]. He acknowledges that he was neither trained nor instructed on his chosen method for extracting Dallas-Clark from her vehicle. [DE 35-2 at 353–54].

Eilert helped Dallas-Clark to her feet and cuffed her. [DE 32 at 2:52:14]. She told him that she had some marijuana and gave him permission to search her vehicle. [*Id.* at 2:53:12, 2:58:37]. Eilert recovered marijuana, two open liquid bottles, and other evidence from Dallas-Clark's purse and vehicle. [*Id.* at 2:56:36, 2:57:28, 3:00:48, 3:02:39, 3:10:52]. She admitted to smoking marijuana and drinking that day. [*Id.* at 3:11:08, 3:12:46]. Eilert uncuffed Dallas-Clark and initiated a field sobriety test, but Dallas-Clark did not complete it. [*Id.* at 3:12:18, 3:13:21, 3:18:22]. She also refused a breathalyzer test. [*Id.* at 3:18:57; DE 35-1 at 346]. When Eilert re-cuffed her, she complained again of shoulder pain. [DE 32 at 3:19:48].

Eilert arrested Dallas-Clark for driving under the influence. [*Id.* at 3:23:29]. To avoid her vehicle being towed, Eilert moved it off the exit ramp. [*Id.* at 3:24:41]. Then he transported Dallas-Clark to the hospital for a blood test [*id.* at 3:39:40, 3:43:18] before proceeding to the county jail [*id.* at 4:25:31]. Eilert does not dispute Dallas-Clark's claims that after stopping at the jail, they returned to the hospital, where she was diagnosed with a fractured shoulder. [DE 6 at 24; DE 35 at 329]. Dallas-Clark admits that she drank alcohol, took medication, and possessed marijuana the day of the stop. [DE 29-3 at 296–99; DE 35-1 at 343]. In Hopkins District Court, she pleaded guilty to possession of marijuana, possession of an open beverage container, speeding, reckless driving, disorderly conduct, and driving under the influence. [DE 29-1 at 133–34]. A charge of resisting arrest was dismissed. [*Id.* at 134].

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law[,]' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Anderson v.*

3

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).

"The burden of demonstrating the absence of a genuine dispute of material fact first rests with the moving party." *George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "If the moving party meets this burden, the burden then shifts to the nonmoving party to establish a 'genuine issue' for trial via 'specific facts.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). "The mere existence of a scintilla of evidence," *Liberty Lobby*, 477 U.S. at 252, or "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, will not defeat summary judgment. Instead, "the non-moving party must 'cit[e] to particular parts of materials in the record . . . or . . . show[] that the materials cited" by the moving party "do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)).

### III. ANALYSIS

Dallas-Clark alleges that Eilert "violently grabbed [her] left arm, jerked her out of the vehicle and slammed her to the pavement" without cause, injuring her left shoulder. [DE 6 at 21–22]. She claims excessive force under 42 U.S.C. § 1983, as well as assault and battery, intentional or negligent infliction of emotional distress, and negligence under Kentucky law. [*Id.* at 25–28].

**A. Excessive-Force Claim**

It is undisputed that Eilert acted under color of state law. To succeed on her Section 1983 claim, Dallas-Clark must show that Eilert violated her Fourth Amendment rights. *See Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023); *see also Graham v. Connor*,

4

490 U.S. 386, 395 (1989). "[R]easonableness is always the touchstone of Fourth Amendment analysis." *Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 427 (2017) (quoting *Birchfield v. North Dakota,* 579 U.S. 438, 477 (2016)). "When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." *Id.* at 428. Inversely, when an officer uses excessive force, his actions are unreasonable. *LaPlante v. City of Battle Creek, Michigan*, 30 F.4th 572, 579 (6th Cir. 2022).

The Supreme Court has "set[] forth a settled and exclusive framework for analyzing whether the force used in making a seizure complies with the Fourth Amendment." *Mendez*, 581 U.S. at 427 (citing *Graham*, 490 U.S. at 395). The framework is a "balancing approach" that "requires courts to weigh an officer's reasons for the force against an arrestee's interest in avoiding it." *Chaney-Snell v. Young*, 98 F.4th 699, 715–16 (6th Cir. 2024). The particular facts and circumstances of the case must be evaluated objectively; an officer's subjective intentions are immaterial. *Mendez*, 581 U.S. at 428; *Graham*, 490 U.S. at 397. Specific considerations "include[e] [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). While this list of factors is not exhaustive, *Roell v. Hamilton Cnty., Ohio*, 870 F.3d 471, 481 (6th Cir. 2017), neither Dallas-Clark nor Eilert asks the Court to consider any others here [*see* DE 29 at 117–18; DE 35 at 331].

Courts must "analyze these factors from the perspective of a reasonable officer who knows that the police must regularly make quick decisions about whether to use force," *Farris v. Oakland Cnty., Michigan*, 96 F.4th 956, 965 (6th Cir. 2024) (citing *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014)), rather than "with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396 (citing *Terry v.*

5

*Ohio*, 392 U.S. 1, 20–22 (1968)). "The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and "not every push or shove . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (cleaned up); *see also Chaney-Snell*, 98 F.4th at 718.

### 1. *Severity of the Crimes at Issue*

Under the first *Graham* factor, courts assess the suspect's apparent crimes and what a reasonable officer might infer from those crimes. *Roell*, 870 F.3d at 481. While the facts known to the officers at the scene are all that should be considered, *see LaPlante*, 30 F.4th at 580, an officer need not observe the commission of a felony before using some degree of force, *id.*; *see also Farris*, 96 F.4th at 965. "Many courts begin this inquiry by focusing on the classification of the offense, i.e., misdemeanor or felony." *Shumate v. City of Adrian, Michigan*, 44 F.4th 427, 440–41 (6th Cir. 2022); *see also Brown v. Chapman*, 814 F.3d 447, 459 (6th Cir. 2016).

Eilert lists the offenses to which Dallas-Clark pleaded guilty, but he provides no authority describing any of those offenses as severe. [DE 29 at 119]. Dallas-Clark was only charged with misdemeanors. *See Shumate*, 44 F.4th at 440–41. Furthermore, courts hold that Dallas-Clark's specific misdemeanor offenses are neither violent nor severe. *E.g. Hughey v. Easlick*, 3 F.4th 283, 291–92 (6th Cir. 2021) (speeding); *Pauly v. White*, 874 F.3d 1197, 1215 (10th Cir. 2017) (reckless driving and driving while intoxicated); *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) (disorderly conduct). As a result, this *Graham* factor weighs in Dallas-Clark's favor.

### 2. *Whether Dallas-Clark Posed a Threat*

Under the second *Graham* factor, courts consider "whether the suspect pose[d] an *immediate* threat to the safety of the officers or others." *Graham*, 490 U.S. at 396 (emphasis added); *see also Roell*, 870 F.3d at 481. Here, Eilert asserts that Dallas-Clark had "bloodshot, glassy eyes" and "an aggressive attitude." [DE 29 at 119]. Dallas-Clark responds that she "was

6

seated peacefully in her vehicle," "made no threatening statements," performed "no threatening acts," and gave Eilert "no reasonable grounds to believe that she intended to offer physical resistance." [DE 35 at 332]. Nothing of record indicates that Dallas-Clark posed an "immediate threat" when Eilert used force. *See Graham*, 490 U.S. at 396. For example, she was not armed. *Compare with Roell*, 870 F.3d at 481. Weighing a reasonable "officer's reasons for the force against an arrestee's interest in avoiding it," *see Chaney-Snell*, 98 F.4th at 715–16, this *Graham* factor weighs in Dallas-Clark's favor.

### 3. *Any Resistance or Attempts to Flee*

Under the third *Graham* factor, courts consider whether the suspect "was *actively* resisting arrest." *Roell*, 870 F.3d at 482 (emphasis added). Active resistance is "noncompliance" coupled with "some outward manifestation" of "volitional and conscious defiance." *Kent v. Oakland Cnty.*, 810 F.3d 384, 392 (6th Cir. 2016) (quoting *Eldridge v. City of Warren*, 533 F. App'x 529, 534 (6th Cir. 2013)). Such defiance might be reflected in "physical force, a show of force, or verbal hostility." *King v. City of Rockford, Michigan*, 97 F.4th 379, 395 (6th Cir. 2024) (quoting *Jackson v. Washtenaw Cnty.*, 678 F. App'x 302, 306 (6th Cir. 2017)).

Eilert claims that Dallas-Clark "made an effort to close her door." [DE 29 at 119]. He cites no record evidence—not even his own testimony—to support that contention. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). The left side of Dallas-Clark's vehicle is not visible in the dash cam footage. If anything, the footage shows that before Eilert attempted to extract Dallas-Clark, the vehicle's driver door was open and stationary for several seconds. [DE 32 at 2:52:00]. Viewing the record in the light most favorable to Dallas-Clark, the Court must disregard Eilert's suggestion that Dallas-Clark might have attempted to close herself off in the vehicle. *See Jones*, 121 F.4th at 562 n.1; *see also Chaney-Snell*, 98 F.4th at 715.

7

Eilert also asserts that Dallas-Clark "actively resist[ed] arrest with force." [DE 29 at 121]. But in his testimony, he does not claim that Dallas-Clark was under arrest when he used force. [DE 29-4 at 311–12]. As Dallas-Clark correctly notes, she "was never even advised she was under arrest until after she had been pulled from the vehicle" and "could not have been resisting an arrest not yet being undertaken." [DE 35 at 332].

Finally, Eilert asserts that Dallas-Clark had "an aggressive attitude." [DE 29 at 119]. The caselaw is not entirely clear regarding "what type or level" of verbal hostility justifies a use force. *Shanaberg v. Licking Cnty., Ohio*, 936 F.3d 453, 459 (6th Cir. 2019) (Nalbandian, J., concurring in the judgment). Vulgar language alone cannot. *See Pershell v. Cook*, 430 F. App'x 410, 415 (6th Cir. 2011); *see also Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 763 (E.D. Ky. 2019). Here, Dallas-Clark's words were not even particularly vulgar, much less "overtly threatening." *See Shumate*, 44 F.4th at 448. Her words did not show any intent to harm Eilert or otherwise evade arrest. *See Moser v. Etowah Police Dep't*, 27 F.4th 1148, 1154–55 (6th Cir. 2022).

Dallas-Clark's charge of resisting arrest was dismissed. [DE 29-1 at 134]. Viewing the record in the light most favorable to her, this case lacks any affirmative manifestation of defiance. *See Kent*, 810 F.3d at 392. This *Graham* factor weighs in Dallas-Clark's favor.

\* \* \*

In sum, when Eilert used force, he suspected Dallas-Clark of only minor and non-violent offenses. Dallas-Clark did not pose an immediate thread to Eilert or anyone else. And she was not attempting to resist arrest or flee. Eilert's use of force must be evaluated in the context of these circumstances. *See Roell*, 870 F.3d at 482 (quoting *Garner*, 471 U.S. at 8–9).

Citing Dallas-Clark's own words, Eilert argues that something other than his use of force might have caused her shoulder injury. [DE 29 at 113–14]. Questions of injury, causation, and

8

damages are immaterial at this stage. "Any force used to accomplish an unlawful detention could be deemed unreasonable under the Fourth Amendment." *Reed v. Campbell Cnty., Kentucky*, 80 F.4th 734, 750 (6th Cir. 2023). "The extent of the injury inflicted is not crucial to an analysis of a claim for excessive force." *Williams v. Maurer*, 9 F.4th 416, 439 (6th Cir. 2021) (cleaned up). Viewing the record in the light most favorable to Dallas-Clark, a reasonable jury could conclude that Eilert's use of force was unreasonably excessive. See *LaPlante*, 30 F.4th at 579.

### B. Qualified Immunity

"Qualified immunity . . . protects public officials, in certain circumstances, from liability for civil damages . . . ." *Barton v. Neeley*, 114 F.4th 581, 587 (6th Cir. 2024) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Eilert invokes qualified immunity here. [DE 29 at 119–22]. This affirmative defense "is distinct from the merits of the plaintiff's claims." *Chaney-Snell*, 98 F.4th at 708 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985)). If Eilert violated Fourth Amendment rights that were not "clearly established" at the time of his actions, then he is immune to Dallas-Clark's claim. *Chaney-Snell*, 98 F.4th at 714. "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quotation marks omitted).

Eilert argues that he did not violate any clearly established rights. [DE 29 at 121]. Dallas-Clark responds that Eilert "had either actual or constructive knowledge of the prohibition against use of unreasonably excessive force." [DE 35 at 334]. Courts "are 'not to define clearly established law at a high level of generality.'" *Moser*, 27 F.4th at 1154 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). However, "this does not mean that 'a case directly on point' is required." *Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015) (quoting *al-Kidd*, 563 U.S. at 741). "Drawing the line at a suspect's active resistance defines the right at a level of particularity appropriate for a claim pursued under § 1983." *Coffey v. Carroll*, 933 F.3d 577, 589 (6th Cir. 2019).

"It was well-established at the time of the incident in this case that a non-violent, non-resisting, or only passively resisting suspect who is not under arrest has a right to be free from an officer's use of force." *Smith v. City of Troy, Ohio*, 874 F.3d 938, 945 (6th Cir. 2017) (citing *Kent*, 810 F.3d at 396; *see also Moser*, 27 F.4th at 1154; *Coffey*, 933 F.3d at 589; *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012) (collecting cases). Merely failing to exit a vehicle does not authorize an officer to forcefully extract the suspect. *Moore v. Oakland Cnty., Michigan*, ___ F.4th ___, 2025 WL 274631, at *3 (6th Cir. 2025) (publication pending) (quoting *Browning v. Edmonson County*, 18 F.4th 516, 527 (6th Cir. 2021)).

Eilert also argues, for the first time in his reply, that he is immune to Dallas-Clark's excessive-force claim "if he was reasonably mistaken about any necessary use of force." [DE 42 at 404–05]. He relies on a search-and-seizure case, not a use-of-force case. *See Pearson*, 555 U.S. at 231. The appropriate qualified-immunity question in this case is whether Eilert violated Dallas-Clark's clearly established rights. Furthermore, if Eilert mistakenly believed that he was allowed to use gratuitous force in detaining Dallas-Clark, that mistake was not reasonable or excusable under the Fourth Amendment. *See Chaney-Snell*, 98 F.4th at 715. Eilert is not entitled to qualified immunity here.

### C. Assault and Battery

Under Kentucky law, an officer who "is making or assisting in making an arrest" may "use . . . physical force" if he "[b]elieves that such force is necessary to effect the arrest," "[m]akes known the purpose of the arrest or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested," and "[b]elieves the arrest to be lawful." Ky. Rev. Stat. § 503.090(1). Similarly, Ky. Rev. Stat. § 503.050(1) justifies one's "use of physical force" where he "believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force." These statutes are part of Kentucky's penal code; they codify defenses

10

for those charged with crimes. *See Fultz v. Whittaker*, 261 F. Supp. 2d 767, 783 (W.D. Ky. 2003). But courts also recognize them as providing affirmative defenses or privileges in civil litigation. *E.g. Browning*, 18 F.4th at 531; *Woosley v. City of Paris*, 591 F. Supp. 2d 913, 922–23 (E.D. Ky. 2008). Eilert invokes these statutes regarding Dallas-Clark's assault and battery claims.[1] [DE 29 at 120–24]. In response, Dallas-Clark argues that Eilert's use of force exceeded what the statutes allow. [DE 35 at 336–37].

Eilert's statutory defenses fall short for two reasons. First, his actions do not satisfy the statutes. Eilert does not definitively claim that Dallas-Clark was under arrest when he used force. [DE 29-4 at 311–12]. At this stage, the Court must assume that she was not. And Ky. Rev. Stat. § 503.090(1) does not protect an officer who was not "making or assisting in making an arrest." Similarly, there is no evidence of any "unlawful physical force" by Dallas-Clark which Eilert could have been protecting himself from. *See* Ky. Rev. Stat. § 503.050(1).

Second, as discussed above, the Court cannot conclude at this stage that Eilert's use of force was reasonable. Under Kentucky law, "[a]n officer is authorized to use the amount of force that the officer reasonably believes is necessary to effectuate an arrest, but no more." *Browning*, 18 F.4th at 531 (citing *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1972)). "Kentucky courts have held that [Ky. Rev. Stat. § 503.090(1)] permits only 'less than excessive force.'" *Id.* (quoting *Brown v. Fournier*, No. 2015-CA-001429-MR, 2017 WL 2391709, at *4 (Ky. App. Jun. 2, 2017)). "Because a jury could find that [Eilert] used more force than was reasonably necessary under the circumstances, he is not entitled to summary judgment with respect to this defense." *See id.*

---

[1] These statutory defenses are not the same as an officer's "qualified official immunity" under Kentucky law. *See Browning*, 18 F.4th at 530–31; *see also Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Eilert has not asserted qualified official immunity regarding Dallas-Clark's state-law claims.

### D. Intentional Infliction of Emotion Distress

Eilert argues that Dallas-Clark cannot maintain an intentional infliction of emotional distress ("IIED") claim where more traditional tort theories apply. [DE 29 at 124–26]. In response, Dallas-Clark argues "that the Court should reserve ruling" on this claim "until testimony is presented at trial." [DE 35 at 337].

"[U]nder Kentucky law, IIED serves as a 'gap filler' to provide a remedy when other means of redress are unavailable." *Peach v. Hagerman*, 675 F. Supp. 3d 755, 777 (W.D. Ky. 2023) (quotation marks omitted); *see also Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky. App. 1999). "In other words, 'if a set of facts establishes a traditional tort, by definition it *cannot* establish intentional infliction of emotional distress.'" *Degolia*, 381 F. Supp. 3d at 772 (quoting *Childers v. Geile*, 367 S.W.3d 576, 584 (Ky. 2012) (emphasis in original)). "Kentucky courts, and federal courts interpreting Kentucky law, tend to dismiss IIED claims when a plaintiff pleads another tort such as assault, battery, or malicious prosecution that provides essentially the same recovery, i.e., instances where IIED is a tag-along state-law claim." *Peach*, 675 F. Supp. 3d at 777 (quotation marks omitted).

Here, Dallas-Clark's claims of excessive force, assault, and battery allow recovery for emotional distress. *See Estep v. Combs*, 366 F. Supp. 3d 863, 887 (E.D. Ky. 2018) (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298–99 (Ky. App. 1993)). Nothing indicates that Eilert might have intended solely to cause Dallas-Clark emotional distress. *See Peach*, 675 F. Supp. 3d at 778. Indisputably, Eilert intended to physically touch Dallas-Clark. *See Estep*, 366 F. Supp. 3d at 887 (citing *Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. App. 2001)). Because other means of redress are available to Dallas-Clark, on her IIED claim, Eilert is entitled to judgment as a matter of law.

### E. Negligence and Negligent Infliction of Emotional Distress

Eilert argues that Dallas-Clark's negligence claim should be dismissed because "there is no such thing as a negligent battery." [DE 29 at 126]. In response, Dallas-Clark argues that "a jury could find that Defendant Eilert acted negligently rather than intentionally." [DE 35 at 338]. Eilert is correct. *See Woodcock v. City of Bowling Green, Kentucky*, 165 F. Supp. 3d 563, 605 (W.D. Ky. 2016), *rev'd on other grounds*, 679 F. App'x 419 (6th Cir. 2017). Kentucky courts recognize that "in a situation where a claim is made against an officer for excessive force, negligence is not an issue." *Downey v. Jaehnigen*, No. 2019-CA-0693-MR, 2021 WL 1583168, at *1 (Ky. App. Apr. 23, 2021). Consequently, "a negligence claim under Kentucky law cannot coexist with a Fourth Amendment excessive-force claim based on the same conduct." *Hall v. Braun*, 546 F. Supp. 3d 553, 564 (W.D. Ky. 2021), *aff'd sub nom. Kirilova v. Braun*, No. 21-5649, 2022 WL 247751 (6th Cir. Jan. 27, 2022). "If a plaintiff's battery theory fails because the officer used reasonable force, then the law of negligence does not offer a fallback tort based on those same intentional actions." *Id.*; *see also Napper v. Hankison*, 617 F. Supp. 3d 703, 753 (W.D. Ky. 2022). For these reasons, Dallas-Clark's negligence claim is dismissed as a matter of law.

Under Kentucky law, claims for negligent infliction of emotional distress ("NIED") must satisfy the same elements as general negligence claims. *Garvin v. Ethicon, Inc.*, 616 F. Supp. 3d 658, 673 (W.D. Ky. 2022) (citing *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012)). Accordingly, Dallas-Clark's NIED claim fares no better than her negligence claim. *See Woosley*, 591 F. Supp. 2d at 923 (finding that a plaintiff's combined IIED/NIED claim was "duplicative" of other tort claims and "improper"). The parties agree that NIED is a "gap-filler" and, in this case, was pleaded as an alternative theory before discovery. [DE 29 at 124–26; DE 35 at 337]. Dallas-Clark's NIED claim is dismissed as a matter of law.

13

## IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Eilert's motion for summary judgment [DE 29] is **GRANTED in part** and **DENIED in part**. Dallas-Clark's claims of IIED, NIED, and negligence are dismissed as a matter of law.

February 11, 2025

Rebecca Grady Jennings, District Judge
United States District Court